# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARLENE PROPPS, | ) | 1:09cv01017 DLB |
| | ) | |
| Plaintiff, | ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## BACKGROUND

Plaintiff Marlene Propps ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on October 15, 2005, alleging disability since March 1, 1990, due to a learning disability, depression, arthritis and diabetes. AR 195-197, 205-211. After Plaintiff's application was denied initially and on reconsideration, she requested a hearing

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

before an Administrative Law Judge ("ALJ"). AR 151-154, 157-161, 163. On October 28, 2008, ALJ Michael Haubner held a hearing. AR 21-55. He denied benefits on February 4, 2009. AR 9-20. The Appeals Council denied review on April 29, 2009. AR 1-3.

Plaintiff filed a prior application in 1999. Following a hearing, ALJ James Baker denied benefits on June 16, 2003. AR 121-133.

Hearing Testimony

ALJ Haubner held a hearing on October 28, 2008, in Fresno, California. Plaintiff appeared with her representative, Michael Ochoa. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 21.

Plaintiff testified that she was born in 1959 and completed the 11th grade. AR 28. Plaintiff could not remember why she picked the date of March 1, 1990, as her onset date. She has never had a job. AR 29.

Plaintiff last used drugs and alcohol in 1999. She lives with her son and daughter. Plaintiff has never had a driver's license and relies on rides from people for transportation. AR 29-30.

Plaintiff testified that she does not make her bed, but changes her sheets twice a week. She does not do laundry, though when questioned further, she testified that she did it once a week. Plaintiff is able to make simple meals once a day, but she doesn't do dishes often. AR 33-34. Her children take out the trash and care for the pets. AR 35. Plaintiff goes to the grocery store about once a month. AR 36. She does not go to church and does not visit friends. Plaintiff spends about five hours a day on the phone and sits and watches television. AR 37. Plaintiff has had prior arrests or convictions for child endangerment, driving under the influence and receiving stolen property. AR 40-41.

Plaintiff testified that she is fully compliant with her treatment, though she admitted that she does not exercise and has not lost weight, as directed by her physician. AR 38. She estimated that she followed her diabetes eating plan about 50 percent of the time. AR 39.

Plaintiff thought that she could lift and carry about three pounds and could stand for about five to ten minutes. She thought she could sit for about 30 minutes and could walk about "ten

feet out of [her] house." AR 41. Plaintiff testified that she would need to elevate her feet for about three to four hours total out of an eight hour day. AR 43. She could pay attention to something for 30 minutes AR 43.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift and carry 50 pounds occasionally, 25 pounds frequently, and could occasionally bend, stoop and crouch. The VE testified that this person could perform light work, including the jobs of production assistant, hand packager and laundry worker/housekeeper. AR 46-47.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry 50 pounds occasionally, 10 pounds frequently, and could occasionally balance, stoop, crouch, and kneel. This person could not crawl or climb. This person could perform the same positions identified in the first hypothetical. AR 47.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently, and could sit, stand and walk six hours each. This person could perform the same positions previously identified. AR 47-48.

For the fourth hypothetical, the ALJ asked the VE to assume that this person could lift and carry 20 pounds occasionally, 10 pounds frequently, and could stand, walk and/or sit for six hours each. This person could occasionally stoop, crouch, kneel and crawl. This person would have slight restrictions of daily living, slight difficulties maintaining social functioning, and slight to moderate deficiencies in concentration, persistence and pace. This person retained the understanding, memory, sustained concentration, persistence and social interaction and adaptation skills necessary for unskilled work. The VE testified that this person could perform the positions previously identified. AR 48.

For the fifth hypothetical, the ALJ asked the VE to assume that this person would likely have difficulty maintaining adequate concentration, persistence and pace in work and social settings. This person could not perform work. AR 49.

For the sixth hypothetical, the ALJ asked the VE to assume that this person had moderate restrictions in activities of daily living, moderate difficulties in maintaining attention and

concentration, and moderate difficulties maintaining in social functioning. This person could not perform other work. AR 49.

For the seventh hypothetical, the ALJ asked the VE to assume that this person could lift and carry three pounds, stand for five to ten minutes, sit for 30 minutes and walk ten feet. This person would need to lie down or elevate their feet for four hours out of an eight hour day and could only concentrate for 30 minutes. The VE testified that this person could not perform any work. AR 49-50.

Medical Record[2]

On March 11, 2006, Plaintiff underwent a psychological evaluation performed by John K. Zhang, Psy.D. Plaintiff complained of depression and a learning disability. Plaintiff reported no history of special education and no history of formal employment. She stated that she was hospitalized in 1994 for depression and suicidal ideation. Plaintiff's sister, who accompanied her to the evaluation, reported that she takes care of Plaintiff's daily needs and performs all housekeeping chores. Plaintiff bathes every four days because of her obesity and pain and spends most of her day watching television. AR 236-238.

On mental status examination, Plaintiff's mood was somewhat depressed with a rather agitated affect. Cognitively, Plaintiff appeared to be functioning at below-average range, with adequate memory and attention. Plaintiff was alert and oriented in all spheres and showed no signs of a thought disorder. Her test scores placed her in the low-average range of intellectual functioning and memory capacity. Dr. Zhang diagnosed depressive disorder, not otherwise specified. He noted that it was essential for Plaintiff to remain abstinent from any form of substance abuse and recommended that she continue to receive psychiatric treatment. Dr. Zhang also believed that additional job skills training may be helpful in assisting her in gaining self confidence and enhancing her life satisfaction. AR 238-240.

---

[2] Plaintiff's claims relate to her mental impairment and therefore only pertinent portions of the medical record will be summarized.

4

Dr. Zhang opined that "at present," Plaintiff would likely have continued difficulty maintaining adequate concentration, persistence and pace in work and social settings. Her prognosis was guarded. AR 240.

On July 11, 2006, State Agency physician R. Y. Hood, M.D., completed a Psychiatric Review Technique Form. In rating her functional limitations, Dr. Hood opined that Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. AR 251-261.

In a Mental Residual Functional Capacity Assessment form completed the same day, Dr. Hood opined that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and in her ability to perform at a consistent pace without an unreasonable number of and length of rest periods. Based on the evidence in the file, Dr. Hood believed that Plaintiff could understand and remember simple, and some detailed, tasks. She could carry out simple tasks for a normal work week and work in usual settings with limited social contact. Plaintiff could also be aware of workplace hazards and take public transportation to work. AR 262-266.

On January 16, 2007, State Agency physician M. C. Vea, M.D., reviewed the medical evidence and affirmed Dr. Hood's prior assessment. AR 270-271.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of depressive disorder, not otherwise specified, obesity, lumbosacral partial sacralization, osteoarthritis of the bilateral knees, cervical spine degenerative joint disease, hepatitis C and diabetes mellitus. AR 14. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, and to sit, stand and walk for six hours in an eight hour day. Plaintiff also had slight to moderate deficiencies in maintaining concentration, persistence and pace. AR 16. With this RFC, Plaintiff could perform a significant number of jobs in the national economy. AR 19.

In so finding, the ALJ explained that Plaintiff had not demonstrated changed circumstances to overcome the presumption of continuing non-disability arising from the denial of her prior application. AR 12.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (depressive disorder, not otherwise specified, obesity, lumbosacral partial sacralization, osteoarthritis of the bilateral knees, cervical spine degenerative joint disease, hepatitis C and diabetes mellitus) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work, but (5) retains the RFC to perform a significant number of jobs. AR 14-19.

Here, Plaintiff argues that the ALJ (1) improperly applied the doctrine of res judicata; and (2) improperly considered the opinions of Dr. Zhang and Dr. Hood.

## **DISCUSSION**

A.   Application of Res Judicata

Plaintiff argues that the ALJ erred when he determined that Plaintiff had not demonstrated changed circumstances to overcome the presumption of continuing non-disability. Specifically, she contends that the opinions of Dr. Zhang and Dr. Hood constitute changed circumstances because they demonstrate that her mental limitations have increased since the last decision.

The principles of res judicata apply to administrative proceedings. *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983). A previous finding that a claimant is not disabled creates a presumption of continuing nondisability. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of nondisability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.* To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.3d

691, 693 (9th Cir. 1988); Acquiescence Ruling ("AR") 97-4(9). For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing nondisability. *Chavez*, 844 F.3d at 693. Changed circumstances also include an increase in the severity of the claimant's impairment, the alleged existence of a new impairment, or a change in the criteria for determining disability. AR 97-4(9).

However, even where the claimant is able to overcome the presumption of disability, certain prior findings are entitled to some res judicata consideration. Prior determinations of RFC, education and work experience are entitled to res judicata absent new and material evidence on the issue. *Chavez*, 844 F.2d at 694. "Adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 97-4(9).

Here, the ALJ determined that no material change had occurred to warrant a departure from the prior finding that Plaintiff could perform restricted light work. AR 18. As explained above, such a finding is required by *Chavez* where there is no new and material evidence to support a change in the RFC. The prior ALJ found that Plaintiff was mentally capable of performing unskilled work. AR 132. Specifically, ALJ Baker determined that Plaintiff experienced slight restrictions in activities of daily living, slight difficulties in maintaining social functioning and slight to moderate deficiencies of concentration, persistence or pace. However, Plaintiff retained the "understanding and memory, sustained concentration and persistence, social interaction and adaptation skills necessary to engage in a full range of unskilled work." AR 132.

In examining the current medical evidence, the ALJ found that Plaintiff had "slight to moderate" deficiencies of concentration, persistence and pace. AR 16. He noted that Dr. Zhang opined that Plaintiff would likely have difficulty maintaining concentration, persistence and pace in work and social settings. AR 18. He also noted that the State Agency physicians opined that Plaintiff could understand and remember simple, and some detailed, instructions, carry out simple tasks for a normal work week, work in usual settings with limited social contact, be aware

of workplace hazards and use public transportation.  AR 18-19.  The ALJ determined, however, that these opinions were consistent with the prior RFC finding that Plaintiff could perform light unskilled work.  AR 19.

Plaintiff argues that Dr. Zhang and Dr. Hood found "moderate and greater limitations," which demonstrates a worsening in her mental condition and precludes application of res judicata.  First, however, Dr. Zhang did not quantify the difficulties that Plaintiff would have in maintaining adequate concentration, persistence and pace in work and social settings.  Second, although Dr. Hood found moderate limitations in certain categories, he nonetheless determined that Plaintiff was capable of performing unskilled work.  SSR 85-15 ("unskilled work include[s] the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").  In fact, Dr. Hood relied on the findings of Dr. Zhang's examination to form his opinion.  AR 269.  He noted that the only evidence of a mental disorder was from Dr. Zhang's examination, and "based on the evidence in the file," Plaintiff was capable of performing unskilled work.  AR 269.  Dr. Vea affirmed Dr. Hood's assessment.  AR 270-271.

Insofar as Plaintiff points to the VE's testimony that a person with the limitations set forth by Dr. Zhang and Dr. Hood could not perform work in support of her argument that her limitations are greater than before, the VE's testimony is not helpful.  The two hypothetical questions that Plaintiff cites included *limitations*, rather than *abilities*, and were therefore not presented to the VE as possible RFC scenarios.  20 C.F.R. § 416.945(a)(1) ("[y]our residual functional capacity is the most you can still do despite your limitations.").  For example, hypothetical six included only the restrictions assessed by Dr. Hood in rating the severity of Plaintiff's mental impairment.  It did not include Dr. Hood's opinion that despite her limitations, Plaintiff could perform unskilled work.  AR 49.  In fact, when the VE was asked whether a person who retained a mental RFC for unskilled work, the VE testified that this person could perform numerous jobs.  AR 48.

The ALJ's application of res judicata was supported by substantial evidence and free of legal error.

B.      Analysis of Medical Evidence

Plaintiff next argues that the ALJ failed to discuss the opinions of Dr. Zhang and Dr. Hood. She contends that the ALJ, in finding that Plaintiff had only "slight to moderate deficiencies of concentration, persistence and pace," ignored Dr. Zhang's finding that Plaintiff would have difficulty maintaining adequate concentration, persistence and pace in work and social settings and Dr. Hood's finding that Plaintiff had moderate limitations in various areas.

The ALJ discussed the findings of Dr. Zhang and Dr. Hood in determining that a departure from the prior RFC finding was not warranted. AR 18-19. Plaintiff's belief that the ALJ rejected Dr. Hood's opinion without explanation is incorrect and ignores Dr. Hood's ultimate finding that Plaintiff could perform unskilled work. The ALJ explained that the State Agency physicians "concluded that claimant could understand and remember simple and some detailed tasks, carry out simple tasks for a normal work week, work in usual settings with limited social contact, and be aware of workplace hazards and take public transportation to work." AR 18-19. Based on this description of Plaintiff's abilities, the ALJ adopted the prior RFC allowing for unskilled work. As noted above, these abilities are consistent with unskilled work. SSR 85-15.

As to Dr. Zhang's finding, he did not quantify how much difficulty Plaintiff would have with certain tasks, nor did he offer an opinion as to what Plaintiff could do despite her limitations. In contrast, Dr. Hood offered an RFC finding based in part on his review of Dr. Zhang's examination results. Dr. Hood's finding, which the ALJ ultimately agreed with, is consistent with a determination that Plaintiff could perform unskilled work. The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ's treatment of the medical evidence is supported by substantial evidence and free of legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Marlene Propps.

IT IS SO ORDERED.

Dated:   **May 2, 2010**          /s/ **Dennis L. Beck**
                         UNITED STATES MAGISTRATE JUDGE